# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FLOR ARENIVAR,<br><br>      *Plaintiff*,<br>  v.<br><br>MANGANARO MIDATLANTIC, LLC *et al.*,<br><br>      *Defendants*. | Civil Action No. 18-32 (TJK) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Flor Arenivar filed this lawsuit in the Superior Court of the District of Columbia against Defendants Clark Construction Group, LLC ("Clark Construction") and Manganaro Midatlantic, LLC ("Manganaro"), the general contractor and a subcontractor, respectively, of a construction project on which she worked, alleging that she was sexually harassed while on the job. *See* ECF No. 3 at 34-47 ("Compl."). Defendants removed the case to federal court on the basis of diversity jurisdiction, asserting that Clark Construction, the only defendant with an individual member that resides in the District of Columbia with Arenivar, was fraudulently joined. ECF No. 1 ("Removal Not."). Arenivar has moved to remand the case back to Superior Court, arguing that Clark Construction is a proper party. ECF No. 14; *see also* ECF No. 14-1 ("Remand Br."); ECF No. 16 ("Remand Opp."); ECF No. 17 ("Remand Reply"). For the reasons explained below, Arenivar's Motion to Remand is **GRANTED**.

## I. Background

According to her complaint, in May 2016, Arenivar began working as a laborer at the construction site for the Museum of the Bible (the "Site"). Compl. ¶¶ 6-7. Clark Construction was the general contractor for the Site, and Manganaro was a subcontractor that performed

drywall installation. Remand Br. at 1. Arenivar alleges that she was repeatedly sexually harassed and retaliated against by one of her direct supervisors, a Manganaro employee, before being terminated. Compl. ¶¶ 9, 10-41; ECF No. 15 ("Arenivar Decl.") ¶ 6; Removal Not. ¶ 26; Remand Opp. at 2.

On October 18, 2017, Arenivar filed this lawsuit in D.C. Superior Court. Compl. She asserts claims under the District of Columbia Human Rights Act ("DCHRA") for discrimination, D.C. Code § 2-1402.11, and retaliation, D.C. Code § 2-1402.61, against both Clark Construction and Manganaro. Compl. ¶¶ 51-64.

On January 4, 2018, Defendants removed the case to federal court on the basis of diversity jurisdiction. Removal Not. ¶¶ 9-11. The parties do not appear to dispute the facts each has set forth regarding the citizenship of the parties. Arenivar is a resident of the District of Columbia. Compl. ¶ 1. The sole member of Clark Construction Group, LLC is Clark Construction, LLC. *Id.* ¶ 3. Clark Construction, LLC has three individual members, two of whom reside in Virginia and one of whom—like Arenivar—resides in the District of Columbia. *Id.* ¶ 3; Removal Not. ¶ 20. The sole member of Manganaro Midatlantic, LLC is Manganaro North America LLC. Compl. ¶ 2; ECF No. 16-1 ("Second Douglas Decl.") ¶ 3. Manganaro North America LLC has two individual members. Second Douglas Decl. ¶ 4. One resides in Massachusetts, and the other in Maryland. *Id.* ¶¶ 5-6.

Defendants assert that Clark Construction was fraudulently joined to prevent removal, and that it was "never [Arenivar's] employer in any respect." Removal Not. ¶ 20; *see also id.* ¶¶ 12-19, 21-29. Furthermore, they argue that if Clark Construction were disregarded for

jurisdictional purposes, the remaining parties would be completely diverse, as is required for diversity jurisdiction.[1]  *See* 28 U.S.C. § 1332(a).

As might be expected, the parties do not agree on the role Clark Construction played in Arenivar's employment.  Arenivar avers in a declaration that Manganaro employees were her direct supervisors on "most days," but that Clark Construction "controlled" the Site and "had the ultimate power" to control Arenivar's assignments on a daily basis.  Arenivar Decl. ¶¶ 2, 6. Moreover, she alleges that Clark Construction occasionally assigned her to a work crew cleaning up debris "that had no relation to Manganaro's drywall work."  *Id.* ¶ 2.  She also states that Clark Construction provided her workplace safety training on her first day on the job, hosted monthly meetings to discuss safety and project timelines, and could send home employees who violated Clark Construction's workplace safety rules.  *Id.* ¶¶ 3-5.  And while Manganaro paid Arenivar directly, she argues that Clark Construction "indirectly funded" her compensation as the general contractor for the project.  Remand Br. at 6.  Finally, Arenivar alleges that after she was terminated, she spoke with a Clark Construction field superintendent, who relayed her complaint of sexual harassment to Clark Construction's Vice President of Human Resources.  Compl. ¶¶ 44, 47.

In response, Defendants note that Manganaro hired and paid Arenivar.  ECF No. 1-1 ("Douglas Decl.") ¶¶ 6-7.  They also argue that Clark Construction "did not direct the day-to-day work of Manganaro employees" or have the power to control work assignments.  ECF No. 16-2

---

[1] As a technical matter, the Court could not reach this conclusion based on the current record before it.  The only information in the record related to the citizenship of the parties are their respective places of residence, Compl. ¶¶ 1, 3; Second Douglas Decl. ¶¶ 3-6, and "it has been held repeatedly that an allegation of residence alone is insufficient to establish the citizenship necessary for diversity jurisdiction," *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 n.20 (D.C. Cir. 1983).  The Court need not reach this issue, however, as it concludes that diversity jurisdiction does not exist because Clark Construction was not fraudulently joined.

3

("Reedy Decl.") ¶ 11. Moreover, Manganaro employees supervised Arenivar on all but a few days. Remand Opp. at 2. Indeed, all of the supervisors identified by name in her Complaint—Odel Quintero, Mark Shelton, Ramon Padron, and Steve Armstrong—were employed by Manganaro, not Clark Construction. Compl. ¶¶ 26-27; Douglas Decl. ¶ 9. And Defendants argue that, even when Manganaro employees like Arenivar were assigned to work on the debris clean-up crew, Manganaro determined which of its employees would be detailed to the crew and retained all authority to hire, fire, and discipline its employees. Remand Opp. at 2; Second Douglas Decl. ¶¶ 8-10; Reedy Decl. ¶¶ 7-9. Defendants also state that Manganaro never exercised its authority to discipline Arenivar for safety violations. Second Douglas Decl. ¶ 12; Reedy Decl. ¶ 10. Finally, Defendants note that Arenivar's discussion with a Clark Construction employee about her termination occurred *after* she was terminated. Removal Not. ¶ 27.

## II. Legal Standards

### A. Removal on the Basis of Diversity Jurisdiction

"A civil action filed in state court may only be removed to a United States district court if the case could originally have been brought in federal court." *Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26, 30 (D.D.C. 2014) (citing 28 U.S.C. § 1441(a)). "A federal court has diversity jurisdiction when (1) there is complete diversity of citizenship among the parties (that is, no plaintiff is a citizen of the same state as any defendant) and (2) the 'amount in controversy' is greater than $75,000." *Witte v. Gen. Nutrition Corp.*, 104 F. Supp. 3d 1, 4 (D.D.C. 2015) (citing 28 U.S.C. § 1332(a)). "Where the district court's jurisdiction is dependent solely on the basis of diversity of citizenship between the parties, there must be 'complete diversity,' meaning that no plaintiff may have the same citizenship as any defendant." *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 130 (D.D.C. 2013) (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978)).

4

"Limited liability companies . . . carry the citizenship of each of their members." *Simon v. Hofgard*, 172 F. Supp. 3d 308, 314-15 (D.D.C. 2016). "The citizenship of the members of an LLC is traced all the way through—that is, when a member of an LLC is itself an LLC, the citizenship of the members of *that* LLC are relevant for diversity purposes, and so on." *Jakks Pac., Inc. v. Accasvek, LLC*, 270 F. Supp. 3d 191, 195 (D.D.C. 2017). An American citizen has citizenship in a state for diversity purposes if he is "domiciled within the state." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). One indication of domiciliary status is a person's current residence. *United States v. Williams*, 825 F. Supp. 2d 117, 124 (D.D.C. 2011).

When a plaintiff files a motion to remand, "the removing defendant bears the burden of proving that removal was proper . . . ." *Simon*, 172 F. Supp. 3d at 315. Parties may submit evidence outside the pleadings, including affidavits, in support of their position. *Walter E. Campbell Co. v. Hartford Fin. Servs. Grp., Inc.*, 48 F. Supp. 3d 53, 55 (D.D.C. 2014). "Courts in this circuit have construed removal jurisdiction strictly, favoring remand where the propriety of removal is unclear." *Ballard v. District of Columbia*, 813 F. Supp. 2d 34, 38 (D.D.C. 2011). "When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case . . . ." *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002) (citing 28 U.S.C. § 1447(c)).

### B. Fraudulent Joinder

"The fraudulent joinder doctrine allows the Court to 'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Nytes v. Trustify, Inc.*, 297 F. Supp. 3d 191, 202-03 (D.D.C. 2018) (quoting *Walter E. Campbell Co. v. Hartford Fin. Servs. Grp., Inc.*, 959 F. Supp. 2d 166, 170 (D.D.C. 2013)). "The 'defendant claiming fraudulent joinder bears a heavy burden, and courts are required to resolve disputed issues of fact and law in

favor of the plaintiff.'" *Simon*, 172 F. Supp. 3d at 315 (quoting *NASA Fed. Credit Union v. W. Jenkins Plumbing & Heating Co.*, 607 F. Supp. 2d 213, 215 (D.D.C. 2009)).

"To demonstrate fraudulent joinder, the removing party must prove that either '(1) there is no possibility the plaintiff can establish a cause of action against the [ ] defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the . . . defendant into state court.'" *Nytes*, 297 F. Supp. 3d at 203 (first alteration in original) (quoting *Walter E. Campbell Co.*, 959 F. Supp. 2d at 170 (second alteration in original)).

"A plaintiff has a possibility of establishing a cause of action or right to relief against a defendant so long as the plaintiff's claim is not 'wholly nonsensical.'" *Simon*, 172 F. Supp. 3d at 315 (quoting *Boyd v. Kilpatrick Townsend & Stockton, LLP*, 79 F. Supp. 3d 153, 158 (D.D.C. 2015)). "[I]f there is even a possibility that a state court would find a cause of action stated . . . , then the federal court must find that the . . . defendant(s) have been properly joined, and that there is incomplete diversity, and that the case must be remanded to the state courts." *Brown v. Brown & Williamson Tobacco Corp.*, 26 F. Supp. 2d 74, 77 (D.D.C. 1998) (first alteration in original) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. 1981)).

"The court's limited role in determining whether a defendant has been fraudulently joined prohibits it from 'delv[ing] into the legal and factual thicket of a merits analysis,' and requires it to 'instead confine its inquiry to whether, on the basis of the claims pled, the plaintiff has shown even a slight possibility of relief.'" *Simon* 172 F. Supp. 3d at 316 (alteration in original) (quoting *Boyd*, 79 F. Supp. 3d at 157). In many courts, the standard for establishing fraudulent joinder is "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999); *see also Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 953 (6th Cir. 2011) (collecting cases).

**III. Analysis**

Defendants do not allege that Arenivar "has fraudulently pled jurisdictional facts to bring . . . [Clark Construction] into state court." *Nytes*, 297 F. Supp. 3d at 203 (quoting *Walter E. Campbell Co.*, 959 F. Supp. 2d at 170 (first alteration in original)).[2] Therefore, the Court's fraudulent joinder analysis turns on whether Defendants can meet their burden of demonstrating that there is no possibility that Arenivar can establish a cause of action against Clark Construction.

In her complaint, Arenivar alleges claims under the DCHRA for employment discrimination, D.C. Code § 2-1402.11, and retaliation, D.C. Code § 2-1402.61. Compl. ¶¶ 51-64. These statutes proscribe "employer[s]" from "discriminat[ing] against any individual[] with respect to [her] compensation, terms, conditions, or privileges of employment," D.C. Code § 2-1402.11(a)(1), and "coerc[ing], threaten[ing], retaliat[ing] against, or interfer[ing]" with any person "in the exercise or enjoyment of . . . any right granted or protected under [the DCHRA]," D.C. Code § 2-1402.61(a). The DCHRA defines "employer" as "any person who, for compensation, employs an individual" or "any person acting in the interest of such employer, directly or indirectly." D.C. Code § 2-1401.02(10).

Arenivar argues that she can establish a claim under the DCHRA against Clark Construction because it is her "joint employer," along with Manganaro. Remand Br. at 4-6. It is well-settled that "for purposes of DCHRA liability, an individual may be employed by joint employers . . . ." *Nytes*, 297 F. Supp. 3d at 204. The tests announced in *NLRB v. Browning-*

---

[2] This is not a case, for instance, "where the plaintiff [has] knowingly and falsely allege[d] a defendant's state of residence in an effort to destroy diversity jurisdiction." *Peachtree/Stratford, L.P. v. Phoenix Home Life Ins. Co.*, No. 1:06-cv-0514, 2006 WL 1209893, at *7 (N.D. Ga. May 2, 2006); *see also Smith v. Hendricks*, 140 F. Supp. 3d 66, 72 (D.D.C. 2015) ("There is no dispute regarding the actual citizenship of the parties, and the parties acknowledge that, if the citizenship of all parties is considered, complete diversity is absent from this case.").

7

*Ferris Industries of Pennsylvania, Inc.*, 691 F.2d 1117 (3d Cir. 1982), and *Spirides v. Reinhardt*, 613 F.2d 826 (D.C. Cir. 1979), "are the appropriate tests" to analyze the issue of joint employment. *Miles v. Univ. of D.C.*, No. 12-cv-378, 2013 WL 5817657, at *8 (D.D.C. Oct. 30, 2013). However, "[t]he D.C. Circuit has suggested in dictum that *Browning-Ferris* is better suited than *Spirides* to resolve 'joint employment' discrimination cases like this one." *Harris v. Att'y Gen. of U.S.*, 657 F. Supp. 2d 1, 9-10 (D.D.C. 2009) (citing *Redd v. Summers*, 232 F.3d 933, 937 (D.C. Cir. 2000)). This Court agrees "that [the Circuit's] dictum is convincing, and, accordingly, [it] concludes that the *Browning-Ferris* test is better suited than the *Spirides* test to resolve claims of joint employment." *Clayton v. District of Columbia*, 117 F. Supp. 3d 68, 83 (D.D.C. 2015). Moreover, the parties concur that the *Browning-Ferris* test, not the *Spirides* test, is more appropriate to apply here. Remand Br. at 5 n.1; Remand Opp. at 4.

Under the *Browning-Ferris* test, Clark Construction would qualify as Arenivar's joint employer if it "retained for itself sufficient control of the terms and conditions" of her employment. *Redd*, 232 F.3d at 938 (quoting *Browning-Ferris*, 691 F.2d at 1123). This is "essentially a factual issue." *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964). "Factors for the Court to consider under the *Browning-Ferris* test include: '[(1)] the alleged employer's authority to hire and fire the relevant employees; [(2)] the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; [(3)] the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and [(4)] the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.'" *Miles v. Howard Univ.*, 83 F. Supp. 3d 105, 117 (D.D.C. 2015) (quoting *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012)),

*aff'd*, 653 F. App'x 3 (D.C. Cir. 2016). "[T]his list is not exhaustive, and cannot be 'blindly applied' as the sole considerations necessary to determine joint employment." *Rent-A-Car*, 683 F.3d at 469.

The Court concludes that Defendants have failed to demonstrate that there is "no possibility," *Simon*, 172 F. Supp. 3d at 315, that Arenivar can establish that Clark Construction "retained for itself sufficient control of the terms and conditions" of her employment, *Redd*, 232 F.3d at 938 (quoting *Browning-Ferris*, 691 F.2d at 1123).[3]

To the contrary, Arenivar has asserted facts that, if true, show "a possibility that a state court would find a cause of action stated." *Brown*, 26 F. Supp. 2d at 77. First, she alleges that both "Manganaro and Clark [Construction] terminated [her] employment," Compl. at 2, which goes to Clark Construction's "authority to hire and fire," *Miles*, 83 F. Supp. 3d at 117 (quoting *Rent-A-Car*, 683 F.3d at 469). Defendants dispute that Clark Construction had any role in Arenivar's termination, Removal Not. ¶ 26, but the Court must "resolve disputed issues of fact . . . in favor of the plaintiff" on a motion to remand, *Simon*, 172 F. Supp. 3d at 315. Second, as to Clark Construction's "authority to promulgate work rules and assignments," *Miles*, 83 F. Supp. 3d at 117 (quoting *Rent-A-Car*, 683 F.3d at 469), Arenivar alleges Clark Construction "had the ultimate power to control how [she] worked and [her] assigned tasks of any given day," Arenivar Decl. ¶ 6. Again, Defendants dispute this characterization, Remand Opp. at 5, but the Court draws disputed factual inferences in Arenivar's favor. Third, as to day-to-day supervision, Arenivar concedes that Manganaro employees were her direct supervisors on "most days," but

---

[3] In light of this conclusion, the Court need not address Arenivar's alternative argument that Clark Construction should be considered her joint employer because it "act[ed] in the interest" of Manganaro when one of Clark Construction's employees relayed Arenivar's harassment claims. Remand Br. at 6-7 (citing D.C. Code § 2-1401.02(10)).

9

notes that she was occasionally assigned to work on a clean-up crew that was managed by Clark Construction employees. Arenivar Decl. ¶¶ 2, 6. She also alleges that Clark Construction provided safety training at the Site and could send employees home for safety violations. *Id.* ¶¶ 3-5. And finally, while Arenivar does not assert that Clark Construction controlled her employment records or directly paid her, the absence of those allegations is not dispositive. *See Nytes*, 297 F. Supp. 3d at 206 ("[Defendant] has cited no legal authority which establishes that [one factor] . . . is dispositive of the joint employment question.").

In arguing that there is no possibility that Arenivar can establish a cause of action against Clark Construction, Defendants rely on three cases, but they are easily distinguishable. The only one from this Circuit applied a motion to dismiss standard, as opposed to this more favorable one (from the plaintiff's perspective) governing a claim of fraudulent joinder. *See* Remand Opp. at 4 (citing *Mack v. Aspen of DC, Inc.*, 248 F. Supp. 3d 215, 218-20 (D.D.C. 2017)). In one of the other two cases, *see* Removal Not. ¶ 29, the court found "no basis" to conclude that a twice-removed corporate parent was an employer when the "only mention" of it in the complaint was its physical location, *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998). In the other, the court, applying Missouri law, did not even consider the prospect of joint employment, *Livingston v. Rehabcare Grp. E., Inc.*, No. 4:16-cv-362, 2016 WL 3276945, at *2 (E.D. Mo. June 15, 2016).

In sum, the Court concludes that Defendants have failed to demonstrate that Arenivar's claims against Clark Construction are "wholly nonsensical." *Nytes*, 297 F. Supp. 3d at 206. Indeed, "whether a defendant qualifies as a joint employer . . . is a fact-intensive inquiry that can rarely be resolved at the pleadings stage." *Clayton*, 117 F. Supp. 3d at 84 n.5. Because the fraudulent joinder analysis "is not as 'penetrating'" as those for a motion for summary judgment

or to dismiss, the Court reaches no determination about whether Arenivar's allegations would be sufficient to withstand those challenges. *Workman v. Stryker Corp.*, No. 09-cv-4947, 2010 WL 2521819, at *3 (D.N.J. June 11, 2010) (citation omitted).

## IV. Conclusion and Order

For all of the above reasons, Arenivar's Motion to Remand, ECF No. 14, is **GRANTED**. It is hereby **ORDERED** that this case shall be remanded to the Superior Court of the District of Columbia. The Clerk of Court is directed to close the case.

**SO ORDERED.**

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 10, 2018